The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. All right, I'm going to hear Springer v. Holcomb and Mr. Hardy. Thank you, Your Honor. I would like to preserve seven minutes for rebuttal and further inform the Court that we will be splitting opening argument. I will be taking five minutes to address the due process component of our interlocutory appeal, while my colleague, Sidney Rapp, will take eight minutes to address the First Amendment issues. For procedural due process claims, qualified immunity applies and shields public officials from liability where they reasonably believe that there was some statutory process available that the plaintiff simply refused to pursue. In this case, the Office of Employment Dispute Resolution offered the Virginia State Grievance Procedure twice to the plaintiffs, David Stoltz and Robert Suppenger, after they had elected to use the LEOPGA at their post-termination hearing but had been subsequently denied three times by DMV. There is no case law on point that could inform DMV that they cannot rely on these invitations by EDR for Stoltz and Suppenger to use the State Grievance Procedure. Does there have to be case law if the statute is unambiguous? If the statute is unambiguous in a certain context, yes, but the problem here is that the district court ended the analysis at determining whether the Grievance Procedure was unavailable. It did not assess whether there was a realistic opportunity had Stoltz and Suppenger accepted those invitations. In fact, Suppenger conceded that point and stated that had he accepted EDR's invitations, he would have received all the process that was due. And this can be found on page 291 of the Suppenger Joint Appendix. And that is all that due process requires, is an opportunity to respond and challenge the charges against him or her. At the time the process was going on with regard to that LEO PGA, you didn't have anything in place to give them a hearing, did you? That is in dispute in the record, Your Honor. However, that actually epitomizes the problem that the district court's analysis has. In a series of communications in November between Stoltz and DMV, Stoltz essentially accused DMV of not having procedures in place to enforce the LEO PGA. He was admitting that it was an inadequate procedure that in his view would not provide him due process rights. The next day, on November 19th, EDR said the Grievance Procedure is open for you to pursue. The day after that, DMV wrote to Stoltz and said that the Grievance Procedure is open. We have consistently said that you are blocked from the LEO PGA, and that is all that is, and please use the Grievance Procedure that has been offered to you. And it is that offer that remained outstanding for a series of close to six months that Stoltz and Sopcich remained in line with. Wasn't the offer something that they had a right to refuse? Actually, DMV had the right as the administrator of the LEO PGA. I thought the election was that of the plaintiffs. The election state law does afford that choice, but that meant we are measuring federal due process under the state standards. Well, are you saying that the plaintiffs never made an election? DMV believed that they had made an election months prior. Well, not what DMV believes. What are you saying today in front of us? Is it your position that they made an election? They made an election under the Grievance Procedure when they told the Richmond Circuit Courts in June of 2013, this will be a termination grievance under the Grievance Procedure Manual. And when they further invoked the jurisdiction of EDR to stay at the timeline for invoking, for filing their grievances. And the district court emphasized that they didn't elect the Grievance Procedure because they didn't file a Form A. Again, this is elevating state law to a federal standard. And DMV had every belief that Stoltz and Subterra would have received their post-termination due process hearing had they accepted the offers of EDR. And again, EDR is the only agency that has executive authority. Didn't they have a right not to accept? I mean, didn't they have a right of an election? So I think the district court found that you were playing a sort of a shell game and that you had said that they had elected the VGP route, but the evidence was fairly clear that they hadn't. And if they hadn't, wasn't it up to you to grant them the LAO PGA hearing? I mean, you would think that, see, at the end of the day, they didn't receive a hearing of any kind. And you would think that you would want to go out of your way to give them a hearing of some sort. And so what happens is when you're wrong or the district court thinks you're wrong in terms of the VGP election, the suspicion arises that no hearing was granted in the case because the plaintiffs were critical of some changes that were being made in DMV policy. I mean, that's at the bottom of it, is you don't want to see people denied a fair hearing because they happen to be critical of either an existing policy or a change in the policy because bureaucracies sometimes benefit from a little openness and from airing things out and from having even top administrators. It's not to say that you can't dismiss them if you have some grounds for doing so, but it's kind of suspicious that they didn't receive any kind of hearing, isn't it? Well, I have two responses to that, Your Honor. First, DMV repeatedly, with every denial of the LAO PGA, it implored the plaintiffs to take the Virginia state grievance. Right, but if the statute gives them the right to choose, then it doesn't matter what DMV wanted. It matters what the plaintiff wanted, and the statute says that the law enforcement officer, this 9.1-502B, may proceed under either the grievance procedure or the law enforcement officer's procedural guarantees, but not both. Well, the word proceed has some ambiguity to it. DMV, again, because this is qualified immunity, we have to look at it from the context of the... It's pretty clear. You get one or the other. You don't get both. But they had... And they got neither. Well, they had proceeded under the grievance procedure, but then backed out. Well, for their suspension, not for their termination. They did not. Well, no, I mean for when they told the Richmond Circuit Court that they were going to be filing on termination grievances under the state grievance procedure. And while this is going on in December, the plaintiffs, they filed an action, a writ of mandamus, in the Roanoke Circuit Court to enforce their choice. And that really gets at the heart of this, the difference between federal standard of due process and state standard. This is an issue for the state courts to figure out. You know, what are these nuances of state law? Whereas the federal standard, was there an opportunity? Under this court's decisions, under Root and Ashley, the NLRB, if you refuse an available process, then you waive your due process claim. And because... The state standard and the federal standard,  before the state deprives you of your employment, that you receive some kind of hearing prior to your suspension or to a termination, or at least prior to a termination. Unless there's, you know, if there's some kind of emergency involved, you can have the hearing post-termination. But generally, whether it's a state standard or a federal standard, you get some sort of hearing before you're kicked out. And they receive no hearing of any kind. By their own choice. And they also happen to be very critical of the commissioner's policies. And that's... That causal connection... To deny someone a hearing. For example, it would trouble me less if this were just a mix-up. Over some misconduct, did it occur or did it not, or whatever. Or some employee squabble, perhaps. But here, these are two of the most local critics of the changes in these zones. So, that's when due process would seem to be important. Well, this has gone through a series of other litigations. Mr. Suffringer, the district court granted our motion for summary judgment and found that DMV had valid reasons for terminating him. That is not the subject of this appeal. Then why are you bringing it up? Just to let the court know that there are... We shouldn't be looking at this in the vacuum. There are reasons. If it's not in the record, then it seems to me you're seeking to prejudice Mr. Suffringer's status by bringing in extraneous matters.  I'll move on, Your Honor. And actually, my time is... Thank you. You have some rebuttal time, too. Thank you, Your Honor. Mr. Rayl, we'd be happy to hear from you. Good morning. I'm Sidney Rayl, Senior Assistant Attorney General, and I'll be representing the defendants or their appellants in this appeal matter. This is an interlocutory appeal for my denial of qualified immunity by the district court of lead administrators at DMV in a law enforcement matter. Of the two questions in the Pickering test that can be reviewed as a matter of law, they are, in this case, the STARS radio and boundary issue. Is this really a Pickering question? I think it's a Pickering question precisely for the reasons that Your Honor twice stated to my colleague. These disagreements that the gentleman, Mr. Stoltz and Mr. Suffringer, had with DMV... Presented to us, and as I understand, it was presented in the trial as a denial of a right to a hearing. No, that's the... In both of the cases, we had the 14th Amendment due process. But in the Stoltz case, we also had the First Amendment issue, which Judge Conrad handled at Roanoke. I'm appearing with respect to the First Amendment issue in the Stoltz case only. And that involved, of course, the issues that were present in Brickie v. Hall. As a matter of fact, my position is... But before reaching the Pickering question, wasn't there a question of whether there was a hearing afforded? No, actually. There are two separate counts in the lawsuit. The plaintiffs are seeking damages under two separate counts, both the theory of due process, in which they will have to show that they were damaged by the denial of due process, and the theory of First Amendment violation, in which the plaintiff, Stoltz, will have to show that he was damaged by retaliation. But if it was simply a matter of... Let's suppose they were denied a hearing, all right? They were denied a hearing. Were they not? The plaintiffs were denied a hearing prior to... I'll accept Your Honor's supposition and move on to the separate... I think it's a separate question, Your Honor. What would the damages be if they're denied a hearing? They should have a hearing. But that's what I'm getting at. Is that the...  Or are the damages for a denial of due process a question of if they had been due processed, there never would have been any termination? The district court did not decide that. As a matter of fact, he made statements in 2016, I believe. Possibly it was 2015. They wouldn't be affording a hearing. That's not before the court. I assume that your argument is that you're trying to say it was not clearly established for purposes of that First Amendment issue. Are you talking about the fraud and waste? Yes, Judge. So you've raised it under public concern. And the question would be whether or not fraud and waste in that speech to the secretary was a violation. Yes, Judge. That's your argument? Yes, Judge Floyd. That's the only one you're talking about? There are three prongs to the test that comes up in First Amendment retaliation. There is the public concern issue. There's also the Pickering balance issue. And then there's the factual issue of substantial factor. And for purposes of this interlocutory appeal, we'll assume that Mr. Stoltz would proceed to trial and demonstrate the substantial factor in his decision to be terminated. So the focus on the interlocutory issue is either public concern or Pickering balance. And I was beginning my presentation on Pickering balance with respect to the two issues. I'll take it from Judge Wilbins' question. He's not really interested in that. And I want to hear about the other side of that, the public concern. It seems to me they're two different. It's almost like a good bar exam question because it seems to me you've got a much better argument on the stars than you do on the other issue regarding complaining about a personnel matter. Tell me why they're of equal merit in terms of the qualified immunity analysis. Well, I never said they were equal. I will distinguish. So you agree that your stars argument is stronger then? I will agree that the stars argument presents a clearer problem with the Pickering balance. That is the government interest in not having the agents in the field confused by Mr. Stoltz's representations as opposed to Assistant Commissioner Hill's representations. What kind of similar concern or other serious concern is presented in the first? I mean, I understand your stars position very clearly. But what about the, you know, where's the threat to the members of the public? Where's the, you know, public interest in how this employment issue was being handled within the DMV? Well, actually, there's a lack of public interest. This is an internal process. Mr. Stoltz was using it. He was trying to intervene and strengthen Mr. Suppenger's claim that Mr. Suppenger had fraud, waste and abuse. Or that the employee Dawson was causing either fraud, waste or abuse in a workplace disturbance. And a workplace is, of course, internal and is not something that's reviewed because it's not protected. OK, you know what? You know what? I flipped my questions. I apologize. OK. My problem with your argument is the stars argument. How is this an issue of qualified immunity for you? How are you protected by that? I mean, here you have these officers so concerned about the safety in the field. They go to talk to a state legislator. They talk to Senator Deeds. Senator Deeds even agrees to pursue an inquiry into this. What is the type of situation that you're not protected on the qualified immunity front? Of course. Thank you. They were speaking after a decision was made. A decision was made. And it was communicated to Stoltz, who was the in command. He was the commanding officer in the Appomattox division. He was also at SAC even when he wasn't with Appomattox. A decision had been made in July. The decision was that DMV was going to reorganize, that they had coordinated with the Virginia State Police, that there was going to be the availability of the officers in the field, the field agents, to go on and off. And Mr. Stoltz was disagreeing after the decision was made. He was going outside of his command and saying this was the wrong decision. Why doesn't he have a right to do that? Well, because he's undermining. He used words like they're inept. He used words like they don't know what they're talking about. But it was his position that impacted officer safety and public safety. And it's our position that it impacted officer safety and public safety. But you can only speak through one voice. This is the importance in a paramilitary that was emphasized both in Brickey and in Cruz and more recently in having coherence. What kind of work do the records show how these officers, what kind of law that they enforce? Are they mainly doing traffic issues on the roadway? They enforce the weight of trucks. They enforce the licensing of passenger vehicles. So their responsibilities are not the full range of policing powers. Would you call that a paramilitary force then if they're weighing trucks and checking licenses? It's organized as a law enforcement division of the Department of Motor Vehicles. And so I would ask for it to be treated with the same importance of chain of command. Of course, a field officer has to obey. How are they supposed to voice their complaints? Well, see, in a paramilitary organization, when an order has come down, what is expected by the assistant commissioner is obedience to that order. He provided not only the training, and it was outlined in an email. What do you think he should have done if he entertained these misgivings? Oh, you mean Stoltz? Yes. What should Stoltz have done? Yeah. He should have stayed within his chain of command and tried to convince them otherwise. Right. He took it outside. In effect, by going to Senator Deeds, knowing that Senator Deeds was trying to take policing power away from DMV, switching it over to the state police, he did exactly... Does the stickering contemplate that there would at least be some instances where someone would take a matter outside if it were a matter of public concern? Yes. But what the court has to decide is whether what he's doing primarily undermines the mission of the agency or primarily informs... You could make that same argument with respect to any criticism of a division of motor vehicles. I mean, it may be a paramilitary organization, but it's not purely military in the way that it's set up. Because what it does is there's a huge component to public safety on the highways and with respect to enforcement procedures. Yes, there's a military aspect to it, but there's also a very large public safety aspect to it. And you don't want a situation, do you, where everything is just so bottled up that criticism of decisions which could seriously impact public safety can never be aired? My response is that the area of public safety that Stoltz is arguing about is whether the officers in the field would be safe if they lost their connection to the dispatchers. That was the aspect of public safety, not the aspect of collisions or of trucks getting by with too much weight. Well, they would need protection, though. The officers could need protection, couldn't they? Of course they could. I mean, if they confront an irate truck driver who has a deadline and needs to be someplace, and if the officers need to radio for help and they don't have that network to use? That's perfectly understandable. But the question is, should they be hearing different voices? One voice from Mr. Stoltz, who was bringing public his criticism of the policy that was set in July of 2012, and another of the assistant commissioner, who was reflecting the decision about their safety. We cannot have field officers not knowing what orders to obey. In that respect, it's exactly like any police department. Did Stoltz say he was going to disobey one? Did Stoltz say he was going to disobey? Or did anyone say they were going to disobey? See, the problem is it has military features, but not completely. I mean, the roads and highways are not just used by military vehicles. There's a huge number of members of the public using those. And I would think that the ability of a law enforcement officer to communicate with the dispatcher might be an important component of public enforcement. I don't disagree with that aspect of it. What I'm saying is under the Mazzarella case. You think that notwithstanding the public concern, that there's a greater governmental interest in speaking just under the Pickering balance? Of having coherence. With one voice. So that's your position is that, yes, it's a matter of public concern. But that there's a countervailing public interest in having a paramilitary group speak with one voice. I concur. But that still doesn't get at the due process question, does it? It's completely separate from the due process argument. I'm not arguing the due process argument. Well, you may find yourself arguing it after I ask the next question. What's the relationship between the two? If we find, I mean, whether somebody raises a Pickering claim or whether they don't raise a Pickering claim, aren't they still entitled to a hearing of some sort before they're terminated from their job? In other words, I'm not sure that we need to reach the Pickering claim if they were afforded no kind of hearing whatsoever. The reason why you reach the Pickering claim is that Mr. Stoltz brought into the federal court a claim for money damages as a result of retaliation for his protected speech under the First Amendment. It's quite different. The district court has yet to decide what the remedy would do, what the remedy would be with respect to the alleged deprivation of a hearing. He hasn't decided whether it would be legal or equitable. Are the measure of damages for the denial of a hearing, is the remedy simply to remand some kind of hearing? And if the hearing produces the result that he should not have been terminated, then that would be entitled at that point to backpack. I largely agree with what Your Honor is suggesting, that we would be advocating for Judge Conrad to remand the matter for the hearing. Well, the hearing, and if the hearing found that the individual was unjustly terminated or suspended, then there would be backpay and reinstatement. I largely agree with Your Honor's position on that, and Judge Conrad hasn't reached that question. Should we reach it here? I think that qualified immunity has been given in this court's decision. Well, the problem I have with that is I don't know the qualified immunity. Judge Keenan made the point that the statute is clear. The statute is clear that he should receive some kind of hearing, and he received no hearing. There's a question of whether qualified immunity should be awarded on that. I think there's serious questions here. I think Your Honor's suggestion is that the First Amendment retaliation claim is premature. Well, that's what I'm wondering, because of causation. Pickering has an element of causation. The speech has to be caused. The adverse employment action has to be caused by the speech. Of course. And what I'm saying is I'm not sure how to answer that question in the absence of some kind of hearing, due process hearing, which might bring to light the fact that there were other reasons that made the dismissal perfectly justified. I don't know the answer to that question. What I'm concerned about, and I'm often concerned about it on these interlocutory appeals, is biting off too much. As I understand it, what's before us now is whether you deserve qualified immunity on the due process claim. And if we decide that you don't deserve qualified immunity under the facts as alleged, and I think we give some benefit to the plaintiff's version of the facts there, then it may be that the remedy there is to demand to Judge Conrad or Judge Moon, I don't know who both of them were involved, have them require hearing, then see what the result of the hearing is before an impartial decision maker. And then, immediately, the question may be reinstatement and back pay. But I don't know that we need to reach the Pickering claim at this point in time. Because there's some question about causation. I understand your reasoning fully, Your Honor. Okay. Thank you. Thank you. All right. Now, Mr. Grimes, we'd be happy to hear from you, sir. May it please the Court, good morning. I'll address the due process question. I will not need all of my time, I don't believe. And then my colleague, Dale Webb, will address the First Amendment question. Four years ago today, on October 25, 2013, Robert Suppenger asked for a hearing under the LEOPGA to grieve the termination of his employment. After 38 years as a sworn police officer, the last 22 with the DMV, and Judge Wilkinson, as you pointed out, after complaining about certain improprieties within the DMV, he has a right to do officer safety and other matters. He was denied that hearing. Since that day, there's been nothing but delay and obfuscation from the DMV and the Attorney General's office. This is precisely why we have federal courts. They will not give the hearing. They will not follow the law. You have to take them to court, as in the Wooten case, which resulted in trial by jury, and I believe... You know, they may be delaying. Both sides would accuse the other of everything under the sun. Yes. This has not been a very amicable set of cases, to put it mildly. Both sides would agree to that. Yes. But the delay is not entirely in their interest, because the more they litigate, the more they... If they eventually lose, the more they're liable for attorney's fees, the more they're liable for in terms of the... Lost wages. In terms of back pay damages and all the rest. I mean, they... At the end of the day, you know, you might have to belly up, and that's going to be... You know, it's not... That may not be all that pleasant. But what I think is your strongest point, just speaking purely for myself, is that they had a right to elect a hearing. And it's that simple. And through what seems to me to be, you know, a little two-step and a little kind of dodge, sort of dodge here, dodge there, they didn't even get any kind of hearing. And it's particularly troubling that they didn't get any kind of hearing when they are notable critics of the department. Now, that doesn't answer the causation question, because notable critics can commit an awful lot of actions that justify their dismissal independently. But I'm just wondering, as much as you want to travel this case down the road, we're at an interlocutory appeal. Before us, as I see it, is the question of whether it was a violation of clearly established law to deny them a hearing. And I find myself struggling with the same question that my good colleague, Judge Keenan, was struggling with. But if it's clear under federal law that you're entitled to a hearing before you're knocked out of a job by the state, and if the state statutes are clear that you have some kind of a hearing and you don't get any kind of hearing, your view is that qualified immunity shouldn't be awarded on that. Yes, sir, this was not a hard call for the district court. I don't see it as a hard call for this court. The due process question. They elected a hearing under the LEOPGA. The statute says that you choose one or the other, but you can't have both, as you pointed out, Judge Keenan. The law is clear. There's no ambiguity in the law. And there was no election under the state process because there's no Form A grievance dismissal form in this case. Now, let me tell you something that may not be apparent from the record that may be instructive for you, and that is, just in a minute, the difference between the LEOPGA and the state grievance procedure. The LEOPGA was enacted by the legislature in 1996 or 1998. It provides that the judges of that process are police officers of the same agency, one chosen by the grievance, one chosen by the agency, and the two choose a third, and if they can't agree, a circuit court judge appoints a third police officer. Not some part-time hearing officer, some lawyer who does part-time work for the state. Now, you don't need to know that to reach your decision, but it's helpful, I think, to know the difference between the LEOPGA and the state grievance procedure. Look, I don't feel like I need to say a whole lot more about this. Mr. Grimes, and I don't want to cut you off, but before you leave that subject, could you address Judge Wilkinson's question about if we agree with you on the due process issue, that they were denied their right to a hearing, then is the proper tact to send it back without addressing the First Amendment issues? Are the First Amendment issues really premature at this point? How do we analyze that? Yeah, and that's a tough one. That's a tough one. I tend to agree with you, Judge Wilkinson. Excuse me if that's what you're thinking, that maybe the First Amendment claim is premature. They're separate claims, but it's all related, if you will. I tend to agree. You know, we've been cautioned a lot of times about not extending ancillary jurisdiction and that when these interlocutory appeals come up, they are really interlocutory and they pose a discrete question and they don't require us to answer everything under the sun. And there's always a temptation to do that, but just in terms of what's before the court, the most salient thing before the court is the discrete question of whether it was a denial of due process not to accord these folks any kind of hearing. Let me ask you this. Did they invite your clients to participate in the other grievance procedure? You can invite me all day long to walk through a closed door. Not only a door that's closed, it's been nailed shut. Why? Because of the statute, as Judge Keenan pointed out. And I can quote the statutes to you if you're familiar with them. But that's it. You can choose one or the other but not both. And to invite the grievance to walk through the door after it's been nailed shut, two judges have said that, the director of the EDR said that, and that's the answer. Remedies, a good question, Judge. Anything else on that, Judge Floyder? Well, in terms of analyzing it as a federal due process claim, does it make a difference? Yes, sir. Well, I don't know if it makes a difference or not. You can invite me to do the impossible all day long. I can't do it. Once one door is shut, you can't go through the other. I think that's the answer to your question. I like your remedies question, though. What do you do as an appellate court with respect to remedies? I mean, is it possible that he might receive everything that he needs to receive if he gets his hearing? That's the question I've got in my mind. I give up on, in this case, on trying to figure out what's possible. But as for remedies, if I were this court, I would leave that. We haven't briefed the remedies question. I would let the district court take a shot at that in the first instance if I were appellate judges addressing that question. And you would not address the First Amendment, you're saying? I would not address it because my philosophy, I guess, on interlocutory appeals is perhaps like yours, Judge Cannon, yours, Judge Wilkinson. I don't know your position, Judge Floyd, but just listening to your comments here today, but that's your job, not mine. I'm advocating a position with respect to due process, but that's my view of the universe here. If no other questions, I'll give my colleague a chance to say something. So the other side here in this case has made the point that you can't find a denial of federal due process purely from the violation of a state statute. And that it can be, you can violate clearly established state law without violating clearly established federal law. And so the question I'd like to hear you respond to is that one. It can't always be a violation of federal law. You can write too broadly on this. It can't always be a violation of federal law to violate clearly established state law. So the question then becomes when is a violation of clearly established state law a violation of clearly established federal law? So give us some help on that. When is it a violation of clearly established federal law? When is it not? And why is it a violation of clearly established federal law in your view in this case? When clearly established federal law requires some due process. Some, and we could argue until the cows come home over how much that needs to be. What's your case for that? But my case, my case is I don't have a case because this issue hasn't come up before. It's the statutes. When the statutes tell somebody exactly what to do, not reading the statute is not a defense. That doesn't get to my question. My question was that sometimes I can see a violation of clearly established state law not being a violation of clearly established federal law. A federal system has to work that way. Sure. So what I want to know is why is this a violation of clearly established federal law? I mean, just in terms of the Roth case, you've got to have a property entitlement under Roth to, before you bring, there has to be a deprivation of a property right. It's agreed here. Okay. That's just basic Roth? Yes, sir. Okay. And where is the property right grounded? It has to be grounded in state law, right? The Roth property right has to be grounded in state law. That is agreed here. Okay. Just tell me, where is the property right grounded in the state law here, in your view? What gives you the state law property right that brings due process into play? It's not the process that troubles me. It's just the grounding of the property right. We didn't brief that question because it was agreed. It was conceded. Two points are agreed. There is a property right and there's a constitutional right to a due process hearing. But I draw your attention to your opinion in Myers v. Baltimore County, a 2013 case. As the Supreme Court has emphasized, officials can still be on notice that their conduct violates established law, even in novel factual circumstances. I like better what Judge Mott said in Bonacore v. Harris. That's a Fourth Amendment case, I argued here before the court. You're saying the property right is conceded here. Conceded. It's agreed. All right, sir. If it weren't conceded, where would the property right be grounded? I apologize. I did not spend time to research that question because it's not an issue. What are you saying? It's grounded on employment? It's grounded on employment. The police officer has a constitutional right, property right, to continued employment, yes. That's why you have due process. If there were no property right, there'd be no LEOPGA. It wouldn't exist. Because otherwise the employment... Every state job has a property right. I don't know that. I don't know that. This much I know police officers do. A lot of police officers have a property right and other state employees not have a property right. I'm not saying they don't. I just don't know, Judge Wilkinson. All right, but the point is it was conceded. Yes, sir. So we don't need to get into it. Yes, sir. See, there's a lot of stuff here that we could get into that might be a little tricky to get into. Well, there's... If it's conceded, it's conceded. It is, Judge, and there are law school exam questions in this case which you don't have to reach because certain points are conceded. That's what my colleague brought up. She said it was a bar exam, but I think it would be a bar exam or a law school exam both. Yes, sir. That's what I meant, bar exam. I misspoke. You know, in Judge Monson, Bonacore v. Harris, that was a Fourth Amendment case on lawful entry into a home. What this court said there was that Bonacore approved the violation of a Fourth Amendment claim, and here's the language that I like, quote, we would so hold even if there were no reported opinion directly on point. That's your job as appellate judges. You're going to get novel cases from time to time. All right. Thank you, sir. I feel like I've said enough about this. Thank you for your time this morning. All right. We thank you very much. Mr. Webb? Good morning. May it please the Court, Dale Webb, and I'm representing the appellee, David Stoltz. My intent today was to talk about the First Amendment, but given the discourse of what's happened, I would like to mention a few things about due process if it would be acceptable. Okay. But also address the issue of the interplay between the First Amendment and the due process. If you receive your relief on the hearing, and we agree with your position, is it premature to address the First Amendment issues at this juncture? Yes, I will. The court asked whether there was an opinion. I think there is one, and it's the Zinnerman opinion, 494 U.S. at 125, that says to determine whether a constitutional violation has occurred, it's necessary to ask what process the state provided and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory administrative procedure of affecting the deprivation and any remedies for erroneous deprivations provided by state or court laws. So what you're saying is that the existence of a property right may be that the degree of process afforded indicates whether state law regards something as a property right? I'm saying... That seemed to be the import of that quote. I think it is conceded in this case that our clients had a property right in their job by being public employees. That is a conceded point in this case. I get at this case differently from my colleagues. There are three issues in this case. One, as to the free speech on the fraud issue was clearly established. Number two, on the reorganization, was that clearly established? And three, on the due process hearing, was that clearly established? They all belong together. You're in federal court. You're not going to want to go back to some administrative hearing and have your day there. You're going to litigate it in federal court. So I might agree with you that there's not qualified immunity on one of those or more and there is on one of those or more. Is that not the case? You're going to litigate the due process if they're not entitled to qualified immunity. You're going to litigate some kind of damage question in the federal district court. Yeah, I think that's possibly correct, Judge. I quite frankly had not analyzed this case and whether the due process somehow prevents this court from hearing the First Amendment issues. I had not looked at that and I'm not sure I'm prepared to give an answer about clearly looking at that. Going to Judge Wilkinson's point, if you went back to a state administrative hearing, we're all wasting time. Why can't the three issues be decided if they're not entitled to qualified immunity in the federal district court? I guess it would be up to this panel as to how you want to handle it. I can understand the analysis, which makes sense that the due process makes the First Amendment kind of premature, depending upon what this court does with due process. I can understand that analysis as well. And I'll say for this court, the other case I wanted to mention to you was the RICO case in Garrity. It says violations of state law can transgress a due process clause where the end result is a constitutionally deficient process. And that's what we're dealing with here. So the case is reflected. You can look at the state procedures and state law to see what due process was given. But then the federal standard would look at a different amount, saying if they didn't get a hearing, then it's a violation, which I think is clearly the case. And I think you mentioned earlier about them not having the rules. And to me in this case, once they elected the LEPGA and it was denied for timeliness, there was no rule on timeliness, there was no rule for election. In fact, in our case, we had an affidavit from the HR director saying that they had this process in their mind called the VGP plus process, meaning that if you applied for it, you could get the EDR procedure plus get a panel. But then we do discovery and they say, well, just in our mind, we never really had offered it. Well, are you talking about the May 6, 2014 LUD from the EDR? No, I'm speaking about there's an affidavit or declaration in the Stoltz case from the HR director saying there was a process available. That's what they're trying to say, the VGP plus process. I guess my point being, picking up what you said, I think the fact they didn't have rules in place and then implement those rules after the fact is not a process, it's just an egregious violation of due process in this case. Where do you want to litigate that, in federal court or at some state administrative hearing? Well, I quite frankly thought the way it was handled by Judge Moon in the Wooten case is appropriate. They wanted to put their case out in front of the jury and they put in the issues, let the jury decide, were there good reasons to terminate this person or not? And the jury decided that. Once the jury decided that, that resolved the due process case. That's not necessarily, I mean, Judge Conrad has not reached the question of remedies. Correct. And so, you know, it's not at all clear to me that that's the remedy for denial of due process. There are federalism questions and the rest. Once again, I come back to the question of, you know, is it necessary to decide in this case more than is before the court? And we can get into all kinds of questions of remedies. We can get into all kinds of pickering questions and everything. But what is before the court is a simple question, and that is whether they're entitled to qualified immunity on the question of a denial of due process where the property right is conceded. Yes, Your Honor. You know, it's just a question of trying to bite off more than we can chew. Yes, Your Honor. Does the court want to hear anything about the qualified immunity for the STARS and for the speaking out about the fraud, waste, and abuse system? Yes, I'm interested. I'd like to ask you the question, why is the, if we do get to this issue, why is the first claim, not the STARS claim, but the other claim, why is this an issue of public concern? Thank you. I would like to tell you that, Your Honor. In the record is Tim Sadler's deposition testimony. He's the manager for the Division of State Internal Audit. And he explained the significant public interest of this hotline, the fraud, waste, and abuse hotline. He says it's a statewide system. It's an anonymous system. It allows the reporting of the fraud, waste, and abuse. He says it's been very successful in uncovering fraud throughout the state. It recovers taxpayer money. It stops the abuse of public resources. And he said, actually, the fact that it's there deters people from doing things. And he testified, the most important thing he said, he testified that making sure that the employees and citizens have faith in the integrity of that system was an important public interest. So every time somebody uses a hotline, what are you saying? I don't understand. You're saying that every time they use a hotline, public safety and public interest is immediately implicated? The fraud, waste, and abuse hotline is anonymous reporting. So when someone within the Commonwealth sees abuse of taxpayer money, waste, or fraud, they can call that hotline. And that group investigates those serious issues and makes findings. And as part of that, they recover taxpayer money. They recover and stop abuse that's occurring. So that's the purpose of it. You know, you're only talking about one. That's a very, very broad conception of the personal interest, I mean, public interest of people who use hotlines for purely personal reasons. And the speech issue here is about the internal review of the hotline complaint. That's correct. Right. So it isn't as broad as just using hotlines in general. It's what process did the department apply to the review of the hotline complaint? And why isn't that something that is not of general public interest? Well... How they internally reviewed the complaint, the process that they applied. Well, in this case, we believe that a reasonable official would know that corruption, an alleged corruption or fraudulent manipulation of this process, which is a vital process in the Commonwealth, they would know that that involves and implicates serious governmental misconduct. It would be of interest to the public to make sure that process works. So we have a situation where we have an anonymous reporting system, and the allegation is that people within it are corrupting it by basically what's happening is the Commonwealth is turning over these investigations to the agencies. The agencies are investigating themselves, and they're manipulating the findings. Maybe so down the road, but your whole discussion of the pickering claim is not the public interest. It's important not to define that too sweepingly, but the public interest part of it is only one part of it. There's a pickering balance, and it involves the balance of the governmental interests that opposing counsel has brought up about having, you know, maybe there's a governmental interest of a heightened nature of a paramilitary organization, but also the question of causation here, and that is whether the pickering claim was indeed the cause of a suspension or termination or whether there were other things. And I don't know, I can't, you know, I don't know that I can resolve all those things on this record. I'd just be sort of writing on air, and there's a lot about this. You know, I hate to say it because I realize you all have been litigating it for a long time. Maybe this will settle out the way the Wooten claim did. There might be some advantage in that, but I just come back to my basic point about there's a lot we don't know, and there's a lot that Judge Conrad hasn't reached. I don't think we have the authority to just be opining on this and that, and there's in the context of the locatory appeal, ancillary jurisdiction makes me very nervous. I guess, Judge, and I understand the court's position on that, and I see my time's up. Could I just provide the court some information on the record about, I guess, the underlying problem here? I think it's important to understand it for the public interest. Would the court allow me time to do that? Correctly. Okay. In this case, Judge, in the record at JA 846 and 648, Cheryl Sanders testifies that her director, who's in DMV, instructs her to change witness testimony and ultimately affecting the report. So a report comes out in this case, Judge, that makes a finding that there's no safety implications occurring there, but yet Cheryl Sanders testifies that no investigation was ever done to support that finding. And so we think that is the public interest. Maybe so. Maybe that's something to put into the summary judgment record or whatever when this case marches forward on its never-ending trail. Thank you, Your Honor. Thank you for your time. Okay. All right, Mr. Hardy, I'm pleased to hear from you. Thank you, Your Honor. I want to focus on the question that you posed. When is a violation of clearly established state law equal a violation of clearly established federal law? And in this specific instance, there is no case law on point which mitigates in favor of granting qualified immunity. And this is so because choice of procedures is not a constitutional right. It's the opportunity. What process did this... What if the opportunity's been denied? We disagree with you on that. Well, the opportunity was denied on October 29th. No, but what if we disagree with you that the opportunity for any hearing was denied? How does that affect your continued analysis? I would cite to the Root case and actually the NLRB because in those cases and the Bishop v. Suffolk case, in the Bishop case, the plaintiff was informed by a superior that he could not use the local state grievance procedure that was afforded to city employees. The plaintiff did not use that procedure, declined to do so. And this court held that he waived his due process because he did not take advantage of the opportunity available to him. And in the Crintz case... He filed to take advantage of the opportunity here. He had an election, and he made clear which one he elected. But he did not take advantage of EDR's subsequent offer of process. And that is the whole point. Because he had already chosen his preferred remedy. But let's just say we disagree with you. You lose on that, okay? Where does that leave us on the First Amendment questions that have become part of this case? Is it premature for us to address them or not? As I understand this court's concern, if we remand for, let's say, an LEOPGA hearing, and the administrative hearing finds that Stoltz was... No, all we would find is that they're not entitled to qualified immunity. That's the issue that's in front of us on the interlocutory appeal, is it not? Yes, that is correct, Your Honor. And that would, and remanding for a hearing would essentially negate a First Amendment... Oh, no, no, not necessarily. I mean, you're trying to get us to decide the First Amendment question your way, and what we're saying is that it's premature to decide it. Well, I don't know whether we're saying that, but I'm suggesting that it might be premature to decide it either way based on what we know. And that's what I was indicating, and I apologize for confusing that issue. And I do think that... Let me ask you this in terms of the question of when is a state law violation of clearly established federal. The question of a property right here has been conceded, as I understand it. A public employee has a right to some sort of process hearing. Under federal law? Yes, Your Honor. Okay, so that part of it is out because you conceded that there's a property right here. To some sort of opportunity. To some kind of hearing. Yes. Okay. And it is my argument that qualified immunity should apply because that apparent opportunity existed by virtue of EDR's invitation. And EDR is the state. EDR is not the employer. They are a separate state agency who has the ability to offer this process. And whether or not this complied with state law is largely irrelevant because the Supreme Court of Virginia has held in previous cases that strict noncompliance with the grievance procedure does not prejudice, as of no moment, if it doesn't prejudice the ability of the grievant to get all the process that is due. And that is the point that I am making here. Had Suffenger and Stoltz said, all right, fine, we didn't get our first choice, let's take our second choice, they would have had the opportunity to call witnesses, present evidence, and appear before a neutral arbiter to ultimately decide if their terminations were justified or not. And because DMV believed that's the process that was available to them and there was no law that could have said that this was a sham procedure that would have somehow prejudiced the plaintiffs, that is why qualified immunity. Your view is that the way to make whole here is to provide the hearing that they were denied under state law. That is a very valid reason. As my opposing counsel mentioned, the remedy is, you know, there are two ways to go on the remedy. You can throw it before a jury, or you can indicate that, no, what you were denied is a proper hearing under state law. You've got to be provided a proper hearing under state law. Yes, Your Honor. If qualified immunity is denied, the remedy is to give the plaintiffs what they asked for in the beginning. And that would be an LEOPGA hearing. What did the plaintiffs ask for in terms of a remedy for the denial of due process? And I believe that they had asked for injunctive relief in addition to monetary damages. But I think the injunctive relief is the overriding damage, because that's what gets them the hearing. And whether they succeed on that hearing or not determines whether they are entitled to compensation. But Judge Conrad has not reached the question of a remedy. No, he has not. It was under some discussion at the summary judgment hearing, but he did not come to a decision. Judge Conrad has never ruled on the question of a remedy. No, Your Honor. All right. Thank you. Thank you, Your Honor. Mr. Rowe. I want to directly address the question of whether this Court should reach the First Amendment issue or not. And I want to make reference to Constantine v. George Mason University. That decision is about a decade old, as I recall. And that decision presented an ADA and a First Amendment case brought by a female student against the Board of Visitors at George Mason University. And the Court noted that Judge Hilton, the district judge, did not reach the qualified immunity issue. He went directly to the merits and said it failed to state a cause of action for which relief can be granted. This Court very explicitly said, at the very first opportunity, this federal court should reach an issue of qualified immunity. Now, plaintiffs in the courts of Virginia and in the courts of this district, this circuit, I'm sorry, they plead all kinds of events. Okay, Mr. Rowe, let me just interrupt you for one sec. You'll help us in following you if you start by saying, yes, we should reach the First Amendment. Yes, we should reach the First Amendment. I appreciate that, Judge Kagan. And that's because the district judge reached it. That's because the district judge reached it and because the law from this circuit is that you should decide the qualified immunity issue. He did the same on the organization side. I'm sorry. He did on all parts of First and Fourteenth Amendment. Why shouldn't we decide all three? Yes, if it does have merit, you should decide it because it would protect the public official from going through a trial. If it doesn't have merit, you also should decide it. That's my position on that issue. And getting back to the merits of the two First Amendment claims, there's the STARS, the issue having to do with the driving of the vehicles and the police signals. It was within, the record will reflect, it was within DMV's plan that they would continue to use the STARS system. They weren't planning to leave those field offices without the STARS system. All that they were doing is training them to mark on and mark off so that their location and when they were changing boundaries would be known by the Virginia State Dispatcher. And on the other issue, the fraud, waste, and abuse issue, it's important to note that this complaint of Mr. Suppenger about the behavior of Ms. Dawson, that's the one that Mr. Stoltz intervened in by bringing more papers in, that had nothing to do with fraud. Why wouldn't a hearing of whatever kind, due process hearing or something, help to flesh out the balance, the pickering balance, and supply a great deal more information on the question of causation or on the question of why there was a termination or the question of whatever? In other words, I'm suggesting that whatever remedy is afforded, whether it be jury trial or whatever, is likely to shed a great deal of light on the pickering plan. With respect, I think your Honor is making a practical point. And I do understand your concern about the cancel hearing. You're bringing up a practical point. It's not personal. What I'm saying is the judicial precedent is that no matter what else is going on in a case, qualified immunity is discussed at the forefront, at the soonest possible opportunity. That's the precedent you're working with under Constantine v. George Mason University. Well, that, I concede, that presents another issue. The only point I'm raising is that whatever remedy is afforded for the denial of due process can't help but shed light on the pickering claim and give you a much fuller basis on which to resolve it. It's got to. I mean, we don't have to resolve a claim if there's only a skimpy basis in the record for resolving it. As I look over my right shoulder to the appendix, I find it's a very remarkable conclusion that we don't have an adequate record. But I respect your Honor's opinion. All right. Thank you. We thank you.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Henry F. Floyd